Filed 12/15/25  In re L.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.A. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085756 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2400530 & DPRI2400532) |
| v. | OPINION |
| K.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

K.A. (Father) appeals from a dispositional order removing three of his children, L.A., P.A., and V.A., from his custody pursuant to Welfare and Institutions Code[1] section 361, placing the children in the physical custody of their respective biological mothers and terminating jurisdiction.  On appeal, Father argues:  (1) the juvenile court's jurisdictional findings are not supported by substantial evidence; (2) the juvenile court's findings in support of removal are not supported by substantial evidence; and (3) the juvenile court abused its discretion in issuing an exit order granting sole legal custody of P.A. and V.A. to their biological mother.  We conclude that substantial evidence in the record supports the juvenile court's jurisdictional findings and order of removal.  We further conclude that Father has not met his burden to establish an abuse of discretion with respect to the juvenile court's exit order terminating jurisdiction.  Therefore, we affirm the orders.

## II.  BACKGROUND

A.  *Petitions*

Father is the biological father of five children—Ka.A., L.A., P.A., V.A., and J.A.—from three different biological mothers.[2]  In October 2024, DPSS received a referral alleging general neglect and physical abuse of his children.  After conducting an

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Specifically, Ka.A. and L.A. are children from Father's first marriage; P.A. and V.A. are children from Father's second marriage; and J.A. is the child of Father's current live-in girlfriend.  None of the mothers are parties to this appeal.

investigation, DPSS filed dependency petitions on behalf of all five children pursuant to section 300 et seq. in December 2024. With respect to the children subject of this appeal,[3] the petitions alleged that (1) Father neglected L.A., P.A., and V.A. by failing to provide appropriate care and supervision; (2) Father struggled with unresolved substance abuse involving alcohol;[4] and (3) Father engaged in inappropriate physical discipline of L.A.

B. *Jurisdictional and Dispositional Hearing*

In March 2025, the juvenile court held contested jurisdictional and dispositional hearings on the petitions. With respect to each petition, it accepted into evidence the detention report, jurisdictional/dispositional reports, and two addendum reports filed by DPSS.[5] There was no live testimony presented.[6]

---

[3] This appeal involves only the petitions pertaining to L.A., P.A., and V.A. Ka.A. reached the age of majority prior to the jurisdictional hearing in this case, and the allegations pertaining to him were dismissed in an amended petition. The petition involving J.A. was subject to a separate appeal in which Father raised the same substantial evidence arguments raised in this appeal, but Father decided not to request consolidation of the appeals. On our own motion, we take judicial notice of our opinion affirming the jurisdictional and dispositional order as to J.A. in case No. E085702.

[4] The petition also alleged that Father had a history of substance abuse involving marijuana and that the children's biological mothers knew or should have known of Father's substance abuse but failed to take action to protect the children. However, DPSS later amended the petitions to remove these allegations.

[5] While the juvenile court held separate contested hearings with respect to the allegations pertaining to L.A. and those pertaining to P.A. and V.A., the reports submitted in each case disclosed identical facts to the juvenile court. As such, we combine the summaries of the evidentiary facts set forth in each type of report admitted into evidence.

[6] The record shows that on the date of the hearing, Father filed a series of documents related to his participation in a therapeutic program, his recent drug testing

*[footnote continued on next page]*

3

1. Detention Reports

According to the detention reports Father has five biological children—Ka.A., L.A., P.A., V.A., and J.A. In October 2024, P.A. reported that Father and J.A.'s mother[7] frequently consumed alcohol, smoke, and go out to bars while leaving the children unsupervised at home. P.A. was 11 years old at the time. According to P.A., the lack of supervision resulted in injuries from physical altercations between the children, unsanitary conditions in the home, and no responsible adult to care for the youngest sibling, J.A.

In response to the report, social workers separately interviewed Ka.A., L.A., P.A., V.A., and J.A., who were 17, 15, 11, nine, and seven years old, respectively. V.A. reported that she never saw any physical fights but could hear them occurring in the home; that Father "dr[ank] alcohol and smoke[d] cigarettes" but not directly in front of the children; and that she generally felt safe in Father's home except when the other children begin to fight. L.A. admitted she had been involved in at least one physical altercation with P.A. in Father's home; reported that Father regularly smoked cigarettes and consumed alcohol in his room; and further reported that Father and his live-in

---

history, and attempts to control pests in his home. The record does not show that the juvenile court admitted these items into evidence, and it does not show that counsel requested admission of these items into evidence at the time of hearing. Additionally, at the contested hearings, Father's counsel made reference to the live testimony received in a separate hearing pertaining to J.A, but the transcript of the testimony was not made part of the record in this appeal.

[7] P.A. reported that J.A.'s mother was Father's live-in girlfriend. We take judicial notice of the fact that this reference was to J.A.'s biological mother.

girlfriend (J.A.'s mom) had left the children unsupervised in the home on multiple occasions. P.A. acknowledged being in at least one physical altercation with L.A. and reported that Father often left the children unsupervised in order to smoke cigarettes and consume alcohol in his bedroom. She stated that she often smelled alcohol on Father's person. Ka.A. reported that there was typically very little supervision while at Father's home, that Father drank " 'often' " but " 'd[id] not get drunk' "; and that Father typically left the home unkept, but Father's current live-in girlfriend would clean and care for the children. J.A. reported that L.A. and P.A. "always f[ought]" while in the home; that Father consumed alcohol frequently; and that his mother often got upset with Father for doing so.

The biological mother of P.A. and V.A. reported she was aware of fights in Father's home but explained that she sent her children to the home as part of a family law custody order. However, she also represented that the custody order specified that Father was not to consume alcohol while the children were in his care and was not to smoke because P.A. suffered from asthma. The biological mother of Ka.A. and L.A. reported that she was not aware of physical fights in Father's home; but, she acknowledged that L.A. often reported there was a lack of supervision and expressed her desire not to go to Father's home due to his " 'heavily drinking.' "

When a social worker contacted Father to request an interview, Father expressed that he was unavailable due to his work schedule.

Social workers conducted separate follow-up interviews with each child. P.A. expressed her desire not to return to Father's home; recalled an incident in which she

5

intervened when Father attempted to "choke" J.A.; and recalled witnessing a different incident in which Father "slapped J.A. across the face." L.A. also expressed a desire not to return to Father's home; stated that Father consumed significant amounts of alcohol on a daily basis; and that she "always smell[ed] alcohol" on Father. L.A. also recalled a past incident in which Father lunged at her when he became angry; witnessed Father "strangl[e]" J.A. and " 'slap' J.A. across the face"; and witnessed Father drive his children in a car while reeking of alcohol, expressing his belief that it was safe because "his alcohol tolerance was so high." Ka.A. confirmed that he witnessed Father consume alcohol but had not seen Father acting drunk. He also denied witnessing any incidents in which Father physically harmed J.A.

In the follow-up interview with J.A., he reported that Father "dr[ank] excessively" and " 'g[ot] pissed off' " when he disciplined J.A. J.A. disclosed prior incidents in which (1) Father punched him in the stomach with a closed fist, leaving a red mark; and (2) Father strangled him by grabbing him by the throat. When Father learned of this interview, he contacted the social worker, expressed that she should not believe the things that a seven-year-old child states, and stated that he would refuse to comply further with DPSS's investigation. He declined a request to voluntarily submit to a substance abuse test.

Social workers attempted to make two, unannounced visits to Father's home. During the first visit, they discovered the children had been left unsupervised. During the second visit, no one answered the door. When social workers contacted Father and his

6

live-in girlfriend (J.A.'s mom) by phone, they both denied permission for social workers to enter the home.

DPSS reported that J.A.'s mother was generally cooperative with their investigation, agreeing to speak with social workers and to submit to a drug screening test. She witnessed one incident where Father slapped L.A. across the face but did not believe Father was typically physically aggressive with any of the children. She also reported that she usually worked from 7:30 a.m. until 6 p.m. and, as a result, was "not sure if [Father] dr[ank]" during the day. She did confirm that Father would consume alcohol in the evenings but did not observe him becoming drunk or aggressive during these times.

The detention report noted that P.A., V.A., and L.A. remained in the custody of their biological mothers as part of a negotiated safety plan.

2. Jurisdictional and Dispositional Report

The jurisdictional and dispositional report provided additional background related to Father's relationship with his children. In 2011, Father separated from the mother of Ka.A. and L.A.; a family law court order provided Father with joint legal and joint physical custody of these two children, with a division of custody time. However, in 2013 the mother of Ka.A. and L.A. sought to modify the custody order. In support of her request, she submitted a declaration alleging that Father was not making sufficient efforts to ensure the children were properly supervised and was " 'constantly drink[ing] alcohol' " in the children's presence. She also recalled an incident in which Father called her to pick up the children because he was " 'drunk and unable to drive' " and recalled a second

7

incident in which the mother of P.A. and V.A. contacted her to inform her that Father had been drinking " 'all day' " and it was no longer safe for the children to be in Father's presence. Father disputed these allegations in competing declarations. Ultimately, the family court ordered the parties to meet with a child custody recommending counselor and maintained joint physical and joint legal custody.

In 2015, Father separated from the mother of P.A. and V.A., purportedly due to Father's alcohol abuse. According to a declaration filed by the mother of P.A. and V.A. in family court, Father would repeatedly relapse into alcohol abuse and poorly manage childcare during these times. At one point, the family law court issued orders conditioning Father's visitation time with P.A. and V.A. on Father's not consuming alcohol 24 hours prior to any visits and not consuming alcohol during their visits with Father.

Social workers conducted follow-up interviews with each of the children. Ka.A. confirmed that Father rarely supervised the children but noted that the children were usually left under his care or the care of J.A.'s mother. Ka.A. stated that Father would often consume "two to three beers" upon his return home from work, but this would rarely result in Father's getting "drunk." He acknowledged that, on more than one occasion, he had witnessed Father consume alcohol to the point of slurring his words and having difficulty standing but could not remember the last time he witnessed this. L.A. continued to allege that she had witnessed Father consume alcohol while at home with the children; stated that she would often smell alcohol on Father's breath when he interacted with them; and recalled incidents in which Father had driven her while under

8

the influence of alcohol. Both P.A. and V.A. continued to allege that they were often unsupervised while in Father's care and that they regularly witnessed Father consuming alcohol while in their presence.

DPSS reported that Father initially declined to participate in any follow-up interview, but he eventually agreed to meet with a social worker. During this interview, Father declined to provide requested information regarding his family background, his educational background, or his past relationships with the mothers of his children. Father also declined to discuss any history of substance abuse.

Finally, DPSS attached a police report from July 2023 in which the mother of P.A. and V.A. reported she had to respond to a call for help from her daughters while they were in Father's care. When she called Father to find out what was happening, Father was breathing heavily, was slurring and mumbling his words, and was "obviously intoxicated." She reminded Father that he was not supposed to consume alcohol while her daughters were in his care, but Father denied being intoxicated. He initially resisted when she offered to pick up the girls but relented when confronted with the fact that he was not supposed to consume alcohol while they were in his care and could be subject to a breathalyzer test if she called law enforcement. Upon picking up P.A. and V.A., the girls confirmed that Father had been drinking alcohol. She filed the police report simply to document the incident if future family court proceedings became necessary.

Based upon the information detailed in the detention report and jurisdictional and dispositional report, DPSS recommended that the juvenile court find true allegations of

the dependency petitions and remove the children from Father's physical custody pursuant to section 361.

3. Addendum Reports

In January 2025, DPSS filed addendum reports. On the advice of counsel, Father voluntarily contacted a social worker to offer to submit to a drug test. Father also requested to meet and submit to an interview with the social worker, but he later implied that he was only doing so out of duress because he believed the government was holding his children hostage until he complied with its demands. When Father met with the social worker, he stated he would like to provide a formal response to the allegations of the petitions, and proceeded to dispute various allegations made by the other witnesses detailed in previous reports. After submitting to two drug tests, Father notified the social worker he would not submit to any additional tests and had only submitted to the two tests under duress. The reports also stated that Father continued to deny permission for social workers to enter or inspect his home. The addendum reports also clarified that DPSS was recommending that the juvenile court grant the children's biological mothers sole physical and sole legal custody of L.A., P.A., and V.A. in lieu of dependency, with supervised visitation rights to Father.

In February 2025, DPSS filed additional addendum reports. DPSS reported that Father had been hesitant to provide any updated information to social workers in advance of the contested jurisdictional and dispositional hearing. Father declined to speak directly with a social worker and would only engage via text message. Additionally, Father expressed that he did not trust social workers, did not want to speak with them directly,

10

and would not comply with requests to let social workers inspect his home. He represented that he had privately enrolled in some type of therapeutic program to " 'see if [he had] any substance abuse issues' " but would not permit release of any information to DPSS regarding his participation in the program.

## C. *Dispositional Order and Appeal*

The juvenile court found insufficient evidence to sustain the allegations that Father engaged in inappropriate physical discipline of L.A. or that the children's biological mothers failed to intervene to protect the children from Father's alcohol abuse. However, the juvenile court found true the allegations that Father failed to provide his children with appropriate care and supervision and that Father has an unresolved history of alcohol abuse. It found clear and convincing evidence justifying removal of the children from Father's physical custody pursuant to section 361, subdivision (c), and ordered the children formally removed. However, the juvenile court adopted the recommendations of DPSS to grant the children's biological mothers sole physical and sole legal custody of P.A., V.A., and L.A. in lieu of dependency. The juvenile court also provided that Father was entitled to supervised visitation with the children.

Father appeals from the dispositional orders.

### III. DISCUSSION

## A. *Jurisdictional Findings*

The first argument raised on appeal is that the juvenile court's jurisdictional findings are not supported by substantial evidence. We conclude that the jurisdictional finding that Father's substance abuse involving the use of alcohol placed the children at

11

substantial risk of physical harm is supported by substantial evidence. Given this conclusion, we need not separately address Father's challenge to the jurisdictional finding that he failed to provide adequate supervision.

    1. <u>General Legal Principles and Standard of Review</u>

"Section 300 enumerates the various ways in which a child may come within the dependency jurisdiction of the juvenile court." (*In re N.R.* (2023) 15 Cal.5th 520, 537.) One such circumstance is where substance abuse impairs a parent's ability to provide regular care for a child. (*In re N.R.*, at p. 538; § 300, subd. (b)(1).) Another such circumstance is where the parent engages in physical discipline that causes a child to suffer serious physical harm or places the child at risk of suffering serious physical harm in the future. (*In re D.M.* (2015) 242 Cal.App.4th 634, 639-640 [physical discipline may form basis of jurisdiction under § 300, either subds. (a), (b), or (j)]; *In re Cole C.* (2009) 174 Cal.App.4th 900, 904, 907 [allegations of excessive or not age-appropriate discipline can constitute basis of jurisdiction under § 300, subd. (b)].)

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

## 2. Substantial Evidence Supports the Findings Related to Alcohol Abuse

Here, we conclude substantial evidence in the record supports the juvenile court's finding that Father struggled with substance abuse involving alcohol. Despite being interviewed separately, all five of Father's children reported witnessing Father consume alcohol on a regular basis. This was substantial evidence to support the conclusion that Father regularly consumed alcohol while supervising his children.

Additionally, substantial evidence in the record supports a reasonable conclusion that Father's alcohol consumption placed P.A., V.A., and L.A. at risk of serious physical harm. L.A. reported that Father attempted to drive a car with his children as passengers while reeking of alcohol, and further reported that he had driven her while intoxicated in the past. Ka.A. reported that, on more than one occasion, he had seen Father intoxicated to the point where Father would slur his words and have difficulty standing. Additionally, records from Father's two separate family law cases included declarations by both L.A.'s biological mother and P.A. and V.A.'s biological mother detailing incidents in which Father's ability to care for the children had been seriously impaired by excessive alcohol consumption, including an incident in which the mother of P.A. and V.A. expressed fear that it was not safe for her or any of the children to be in the home due to Father's excessive alcohol consumption. Additionally, because J.A.'s mother told social workers she had never witnessed any of these incidents, the juvenile court could reasonably infer that Father's excessive alcohol consumption occurred when he was the only adult charged with supervising the children in the home. From this evidence, the juvenile court could reasonably conclude that consuming alcohol to the point of being

13

unable to speak clearly; unable to stand; and unable to appreciate the dangers of attempting to drive one's children while intoxicated presents a risk of physical harm to the children.

On appeal, Father argues that L.A. and P.A.'s statements were not credible because they were motivated by a desire to remain permanently in their respective mothers' care. However, under the substantial evidence standard of review, "[t]he appellate court does not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589; *In re L.O.* (2021) 67 Cal.App.5th 227, 238 [" '[I]ssues of fact and credibility are the province of the trial court.' "].) Thus, even accepting that the evidence showed L.A. and P.A. had potential motives to fabricate or exaggerate their reports to social workers, it was within the province of the juvenile court to assess the credibility of these reports and determine what weight to give them.

3. We Need Not Address the Additional Jurisdictional Finding Against Father

"[T]he principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation], means that ' "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 283-284.) Review of a challenge to jurisdictional findings under these circumstances is discretionary (*ibid.*), and "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence" (*In re I.A.* (2011) 201 Cal.App.4th 1484,

14

1492, overruled in part by *In re D.P.*, *supra*, 14 Cal.5th at p. 283; *In re E.E.* (2020) 49 Cal.App.5th 195, 212).

Here, we have already concluded that the jurisdictional allegation that Father's alcohol abuse placed P.A., V.A., and L.A. at substantial risk of physical harm is supported by substantial evidence. Given our conclusion, it is unnecessary to address Father's alternative claim that substantial evidence does not support the jurisdictional finding that he failed to adequately supervise the children while they were in his care.[8]

B. *Dispositional Order Findings*

Father also advances three arguments as to why reversal of the dispositional order of removal is required: (1) there was no substantial evidence to support a finding that any risk of harm to P.A., V.A., and L.A. was ongoing at the time of disposition because Father "was on the verge of completing his substance abuse treatment program"; (2) there was no substantial evidence to support the findings that there were no reasonable means by which the children's physical health could be protected short of removal; and (3) the juvenile court failed to state the facts upon which its order of removal was premised. As we explain, we find no basis for reversal in the record before us.

---

**8** We do have discretion to reach the merits of a jurisdictional challenge that is otherwise rendered moot because at least one jurisdictional finding is unchallenged or one jurisdictional finding is valid. (*In re D.P.*, *supra*, 14 Cal.5th at pp. 283-284.) However, Father has not separately argued that any factors supporting the exercise of discretionary review exist in this case.

15

1. <u>General Legal Principles and Standard of Review</u>

"After a juvenile court exercises jurisdiction over a child pursuant to section 300, it must determine the appropriate disposition for that child." (*In re M.D.*(2023) 93 Cal.App.5th 836, 856.)  Generally, "[t]he juvenile court has broad discretion in crafting a disposition pursuant to a child's best interest" (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179), and a reviewing court "cannot reverse the juvenile court's determination, reflected in the dispositional order, of what would best serve the child's interest, absent an abuse of discretion" (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 64-65; *In re A.E.* (2019) 38 Cal.App.5th 1124, 1140-1141 [juvenile court's decisions regarding provisions of reunification services in dispositional order are generally subject to review for abuse of discretion]).  However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165.)

With respect to removal of a dependent child from parental custody, the juvenile court's discretion is limited by statute.  As relevant to this case, "section 361 restrains a juvenile court from removing a child from the physical custody of her parents unless there is clear and convincing evidence of *two* conditions:  (1) '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being' of the child if she is returned home, *and* (2) 'there are no reasonable means

16

by which the [child's] physical health can be protected without removing' her from the parent's physical custody." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960; § 361, subd. (c)(1).) Thus, because the juvenile court's discretion with respect to removal of a child is specifically limited by statute, we review this aspect of the juvenile court's dispositional order to determine if substantial evidence supports the finding that the statutory bases for removal exists. (*In re M.V.*, at p. 960; *In re M.D.*, *supra*, 93 Cal.App.5th at p. 857.)

Additionally, because the findings in support of removal must be made under the clear and convincing evidence standard (§ 361), we keep this standard in mind when assessing whether substantial evidence supports the juvenile court's findings. (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.) When reviewing a finding made under the clear and convincing evidence standard, we determine whether there is evidence that is reasonable, credible, and of solid value from which a reasonable fact finder could conclude it is highly probable that the fact was true. (*In re K.M.* (2024) 102 Cal.App.5th 910, 914.)

2. Substantial Evidence Supports Finding an Ongoing Risk of Harm

Here, substantial evidence in the record supports a finding that the risk of harm to P.A., V.A., and L.A. was ongoing at the time of disposition. First, the evidence in support of the jurisdictional finding is also relevant to support a finding of an ongoing risk of harm. This evidence included interviews with each of defendant's five children. All of the children reported that Father would consume significant amounts of alcohol

17

while they were under his supervision;[9] and different children recalled separate occasions in which they had seen Father lose control of his motor functions or exhibit impaired judgment as the result of consuming alcohol while they were in his care.[10]  Thus, the evidence showed that Father's substance abuse occurred in situations "in which it was physically hazardous to do so" and was not "confined to [his] private moments alone." (*In re L.W.* (2019) 32 Cal.App.5th 840, 842, 850.)  And "the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection" because " 'past failure [can be] predictive of the future.' "  (*In re A.F.* (2016) 3 Cal.App.5th 283, 289.)

Second, the evidence showed that Father refused to acknowledge any substance abuse at all.  Father told social workers that he was only submitting to drug testing under duress, and suggested that his engagement with voluntary services through a private provider was not because he believed he had issues with alcohol abuse but merely to see if he had an issue.  However, denial of an ongoing problem "increases the risk of it recurring" and is substantial evidence to support a risk of ongoing harm.  (*In re V.L.*

---

[9] We also observe that each child was interviewed separately on multiple occasions; the children lived separately with their respective mothers while not in Father's custody; and the oldest two children were already teenagers during these interviews.  Under these circumstances, the fact that multiple children corroborated Father's alcohol abuse adds to the credibility of their statements.

[10] P.A. reported that Father would leave the children unsupervised while drinking alcohol such that the children would frequently engage in physical fights when unsupervised; and L.A. reported that Father had driven with his children as passengers in the vehicle while "smelling like alcohol."  Ka.A. reported that he could recall more than one occasion in which Father was "very drunk" such that he would slur his words and have trouble standing.

(2020) 54 Cal.App.5th 147, 156; see *In re E.E.*, *supra*, 49 Cal.App.5th at p. 213 [A parent's refusal to acknowledge responsibility for the conduct giving rise to dependency can support a finding that children face a current risk of harm.].)

Third, the evidence showed that Father repeatedly refused to cooperate with DPSS's attempts to investigate the existence of a substance abuse problem or the degree of its impact on Father's ability to safely care for J.A. Social workers reported that Father would not permit any DPSS representative access to inspect his home, had ignored requests to meet with social workers for an interview, refused to release information permitting social workers to verify the type of voluntary services he had enrolled in and his progress in those services, and had refused to submit to ongoing substance abuse screening initiated by DPSS. Evidence of past substance abuse combined with evidence of present "evasive behavior" and "resistance to monitoring and services" gives rise to a reasonable inference that the substance abuse has not been resolved. (*In re E.E.*, *supra*, 49 Cal.App.5th at pp. 214-215.)

Father's reliance on competing evidence in the record does not persuade us to reach a different conclusion. The fact that six months had passed without any reported incidents of excessive alcohol consumption has little persuasive value, as the children were maintained outside of Father's custody pursuant to safety plans with their biological mothers. Additionally, the juvenile court was not required to place any particular weight on Father's participation in a voluntary outpatient program. Father declined to release information to social workers in order to permit them to review the nature of the program or evaluations of Father's progress in the program. Instead, the evidence on this issue

consisted of a letter submitted directly by Father on the date of the dispositional hearing.[11] While the letter stated Father had completed 33 substance abuse group sessions, it did not explain what Father's treatment goals were, how much progress Father had made towards those goals, or how many additional sessions were anticipated as part of Father's program. Finally, the juvenile court was not required to place much weight on the six negative substance abuse tests that Father received through his voluntary program. Notably, all six of the reported tests occurred during the 45 days immediately preceding the contested dispositional hearing. Given the repeated reports of a persistent alcohol abuse problem, the juvenile court was not required to infer that this relative brief period of sobriety was sufficient to dispel any risk of future harm to J.A.

Thus, when viewed as a whole, we hold the record contains credible evidence of solid value from which the juvenile court could reasonably conclude there was a high probability that Father's substance abuse was not resolved and would continue to present a risk of physical harm to L.A., P.A., and V.A. if they were returned to his custody.

3. Substantial Evidence Supports Finding There Were No Reasonable Means To Protect the Children Short of Removal

We also disagree with Father's contention that there was no substantial evidence to support the juvenile court's finding that there were no reasonable means to protect J.A. short of removal.

---

[11] We further observe that it is unclear from the record whether the juvenile court ever admitted these documents into evidence in the cases involving L.A., P.A., and V.A.

20

Evidence in the record shows that Father repeatedly refused to cooperate with any DPSS investigation or monitoring. He expressly told social workers he would not cooperate with any investigation efforts; refused to release information to permit DPSS to assess the nature of any voluntary services he had obtained for himself or his progress in those services; and expressly stated he would not comply with any DPSS requests to submit to random drug screening. Father repeatedly refused to permit social workers to enter his home, and his live-in girlfriend indicated she would not give permission for social workers to enter the home without Father's consent. Further, there was evidence in the record to suggest that Father had disobeyed prior family law orders and custody agreements with respect to P.A. and V.A.

Taken together, this was credible evidence of solid value from which the juvenile court could reasonably conclude that there were no reasonable means to protect L.A., P.A., and V.A. short of removal. Notably, some lesser form of family maintenance as an alternative to removal requires that a parent have insight into the problems leading to dependency (*In re M.D.*, *supra*, 93 Cal.App.5th at pp. 858-859), as well as a willingness to work with social workers, such that social workers can continue to ensure the dependent child's safety and wellbeing (see *In re N.M.* (2011) 197 Cal.App.4th 159, 171 [One factor to consider in determining whether removal is appropriate is whether a parent "was largely cooperative."]). There is no assurance that social workers can effectively monitor the safety and wellbeing of a dependent child upon return to parental custody where a parent repeatedly and expressly states he is unwilling to provide social workers with relevant information and unwilling to permit social workers access to his home.

Based upon this evidence, the juvenile court could reasonably conclude there were no reasonable means of protecting the children short of removal.

4. Failure To State Facts on the Record

Finally, Father contends that reversal is required because the juvenile court failed to state the facts upon which it relied to remove L.A., P.A., and V.A. at the time of disposition. We agree with Father that a juvenile court is required to state the facts on which the decision to remove the minor is based (§ 361, subd. (e)) and that the juvenile court does not appear to have clearly done so in this case. "However, 'cases involving a court's obligation to make findings regarding a minor's change of custody or commitment have held the failure to do so will be deemed harmless where "it is not reasonably probable such a finding, if made, would have been in favor of continued parental custody." ' " (*In re L.O.*, *supra*, 67 Cal.App.5th at p. 247.) Specifically, we ask whether the juvenile court would have removed the dependent minor "had the juvenile court reflected upon and stated the facts as required under section 361." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1069.) In this case, we conclude that any failure to state facts in support of removal was harmless.

Notably, before making its jurisdictional findings and dispositional order, the juvenile court repeatedly commented it was "intimately familiar" with Father's three separate dependency cases involving all this children. It specifically asked counsel to focus their arguments on specific issues based upon the juvenile court's own review of the evidence. Thus, this is not a case in which the juvenile court was silent and merely adopted the recommendations of DPSS in a pro forma manner. Rather, the juvenile

22

court's colloquy makes clear that it fully considered the evidence before reaching its decision.  Given this record, Father has not shown it is reasonably probable the juvenile court would have reached a different decision, even if it had been reminded to state the facts upon which its decision was premised.

Because the juvenile court's express and implied findings are supported by substantial evidence in the record, and because the record does not suggest it is reasonably probable the juvenile court would have reached a different decision had it been required to state its findings in greater detail, we conclude that Father has not met his burden to show reversal of the dispositional order removing L.A., P.A., and V.A. from Father's physical custody is warranted on appeal.

C. *Exit Order Removing Legal Custody from Father*

Finally, Father argues that the juvenile court erred in issuing its exit order terminating jurisdiction.  Specifically, Father contends it was an abuse of discretion for the juvenile court (1) to grant sole legal custody of P.A. and V.A. to their biological mother, and (2) to require that his visitation with all three children must be supervised. We disagree.

" 'When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make "exit orders" regarding custody and visitation.  [Citations.]  Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court.' "  (*In re A.C.* (2011) 197 Cal.App.4th 796, 799; *In re Anna T.* (2020) 55 Cal.App.5th 870, 871; § 362.4.)  " '[T]he juvenile court has broad discretion to make custody orders when it

terminates its jurisdiction in a dependency case.' [Citation.] We review a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion, and will not disturb the order 'unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.) " ' " 'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Ibid.*)

In this case, we cannot conclude that the juvenile court's decision to grant sole legal custody of P.A. and V.A. to their biological mother was arbitrary or capricious under the circumstances. "An order granting a parent sole legal custody 'means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child.' " (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 227.) Here, the record shows that Father was already actively violating an existing family law order pertaining to the care of P.A. and V.A. by repeatedly consuming alcohol and smoking cigarettes while they were in his care. DPSS reported that the order prohibiting smoking cigarettes was imposed specifically to protect P.A.'s health due to an asthma. Where the record shows that Father has been unwilling to comply with court orders specifically designed to protect the health and welfare of his children, it is not arbitrary or capricious for the juvenile court to conclude that sole legal custody should be given to the children's biological mothers.

We also conclude that the record does not show an abuse of discretion with respect to the supervised visitation provisions of the exit order. As Father admits in his opening

24

brief, "reviewing courts tend to affirm supervised visitation orders when such an order [is] necessary to protect the minor, due to remaining safety concerns," and Father's sole argument on this point is premised on his contention that "there were no remaining safety concerns at the time of the dispositional hearing." However, at the time of disposition, the juvenile court found that there was an ongoing risk of harm posed by Father such that removal of the children from his physical custody was warranted pursuant to section 361, and we have concluded that the juvenile court's finding on this point is supported by substantial evidence in the record. Where the evidence in the record permits the juvenile court to reasonably conclude that Father poses an ongoing risk of physical harm to the children, it is not arbitrary or capricious for the juvenile court to require that any visitation remain supervised.

## IV. DISPOSITION

The dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

25